AMERICAN HISTORICAL SOCIETY, INC., Respondent, v. WILLIAM A. GLENN, Appellant.

Supreme Court, Appellate Term, First Department, February 3, 1928.

**Courts — City Court of New York — jurisdiction — City Court Act, § 27, permitting execution of all processes of court " in any part " of State is unconstitutional — provision transcends State Constitution, art. 6, § 15, giving " original jurisdiction concurrent with the Supreme Court " — Constitution merely endowed court, after it acquired jurisdiction, with power to continue action in same manner as Supreme Court.**

Section 27 of the City Court Act (Laws of 1926, chap. 539), providing that " all process and mandates of the court may be executed in any part of the State," is unconstitutional, since it transcends the jurisdiction prescribed by section 15 of article 6 of the State Constitution, as amended in 1925. That section which provides that the City Court shall have original jurisdiction concurrent with the Supreme Court, in actions for the recovery of money only, in which the complaint demands judgment for a sum not exceeding $3,000 and interest, did not extend the process of the court to counties beyond those included within the city of New York, but was intended to endow the court, after it had acquired proper jurisdiction of the person or subject-matter in the manner now provided by law, with the power to continue the action and authority to enforce its mandates in the same manner and with the same effect as the Supreme Court might exercise.

Accordingly, the summons and complaint in this action, which were served on the defendant in Albany county, where he resides and has his place of business, must be dismissed, since the court neither has jurisdiction of the person of the defendant nor of the subject-matter of the action.

APPEAL by defendant from an order of the City Court of the City of New York denying his motion to dismiss the complaint on the ground that the court has no jurisdiction of the person of the defendant nor of the subject-matter of the action.

*Jay Leo Rothschild,* for the appellant.

*Thomas W. Constable,* for the respondent.

BIJUR, J. The gravamen of this motion is that the court has no jurisdiction over the person of the defendant. The summons was served upon defendant in the city of Albany, where the defendant resides and has his place of business.

The power of the court to serve its process outside of the city limits is sought to be justified by section 27 of the City Court Act (Laws of 1926, chap. 539): " All process and mandates of the court may be executed in any part of the state."

Defendant, appellant, claims that the act in this respect is unconstitutional, because it transcends the jurisdiction prescribed by section 15 of article VI of the Constitution, as amended in 1925.

That section, so far as material, reads: " The City Court of the city of New York is continued, and, from and after the first day of January in the second year following the adoption of this article, it shall have the same jurisdiction and power throughout the city of New York, under the name of the City Court of the city of New York, as it now possesses within the county of New York and the county of Bronx, and original jurisdiction concurrent with the Supreme Court in actions for the recovery of money only in which the complaint demands judgment for a sum not exceeding $3,000, and interest, and in actions of replevin, foreclosure of mechanic's liens and liens on personal property where the property involved does not exceed in value the sum of $3,000. Its jurisdiction to enter judgment upon a counterclaim shall be unlimited."

Respondent, as I understand it, argues that the constitutional provision that the court shall have " original jurisdiction concurrent with the Supreme Court " in the class of actions enumerated (*i. e.*, actions for the recovery of money only, actions of replevin, foreclosure of mechanic's liens, and liens on personal property) means that the power of the City Court is increased to that of the Supreme Court in respect of giving it State-wide jurisdiction for the service of its summons on defendants. Arguments based on former decisions concerning the jurisdiction of the court fail to meet the exact question at issue here because it is respondent's claim that the very amendment under discussion has obviated difficulties presented by other sections of the Constitution with which previous decisions were concerned. It seems to me that the most promising approach to a solution of the difficulty is to endeavor to understand the point of view of the draftsman. To that end it is essential to restate the jurisdiction of the court as it was at the time of the drafting of the amendment. At that time it was defined solely by legislation. (Laws of 1920, chap. 935.) Summing up sections 18, 19 and 37, the jurisdiction of the City Court extended to (1) an action in which the complaint demanded judgment for a sum of money only, but the judgment could not exceed $2,000, with four exceptions, to be presently enumerated; (2) an action to recover one or more chattels of a value not exceeding $2,000; (3) an action to enforce a mechanic's lien upon real property situated in the city; (4) an action to enforce a lien not exceeding $2,000 upon chattels; (5) the entry of a judgment by confession for not more than $2,000 against defendants resident in the city. Actions in which the amount of recovery was not limited were (a) upon a bond given in the court; (b) to recover damages for breach of promise of marriage; (c) in a marine cause (under the historic jurisdiction of the court); and

(d) where money is payable in installments, actions might be brought for the installments (apparently regardless of the total amount involved). Section 37 provided that " a mandate of the court can be executed only within the city of New York " with the exception of (1) an execution; (2) a subpœna; (3) a warrant to apprehend a witness; (4) an order made in the course of an action requiring performance of an act; (5) an order to show cause why a person should not be punished for contempt; and (6) a warrant to apprehend a person charged with contempt. Of these, 1, 4, 5 and 6 might be executed in any part of the State, and 2 and 3 only within the confines of the adjoining counties. The word " city " was defined as one constituted prior to June 6, 1895, namely, the boroughs of Manhattan and The Bronx. It will be observed that the exceptions do not include a summons, and that, therefore, the court had no jurisdiction to summon to its bar any one not found within the confines of the city. This, then, so far as material to the present controversy, was the picture before the draftsman of the clause of the Constitution now under consideration. Before proceeding further, it may be well to advert for a moment to the events which led up to the amendment.

In the proposed amended Constitution adopted by the Convention of 1915 (which failed of approval) section 21 of article 8 provided that " The City Court of the city of New York is continued * * *. It shall have the same jurisdiction and power throughout the city of New York under the name of the City Court of New York as it now possesses within the county of New York and the county of Bronx and original jurisdiction in actions for the recovery of money only in which the complaint demands judgment for a sum not exceeding three thousand dollars. * * * " The reports to the Legislature submitted by the Constitutional Judiciary Convention in 1922, and by its executive committee in 1924 and 1925, refer to the present (then proposed) amendment as one designed to make the jurisdiction of the City Court conform to that of the County Courts throughout the State, and to extend the jurisdiction of the court over the greater city, which is spoken of as one urban community with common interests. They condemn the suggestion to unite the City Court with the Supreme Court, as tending to defeat the purpose now subserved by the City Court of affording to the people of the greater city, as the County Courts afford to the people of other parts of the State, the advantage of a tribunal which ought to be less crowded with cases than the Supreme Court. It will be observed that the three purposes which stand out as the inspiration of the amendment were *first*, of course, to give the City Court a constitutional status,

*second*, to extend its territorial jurisdiction over the greater city, so that a unified community might have a unified local court, of somewhat the same civil jurisdiction as the County Courts in other counties, and *third*, thus to relieve the crowded calendars of the Supreme Court and facilitate the trial of actions involving generally no more than $3,000. There is no mention or hint anywhere, that I can find, of any intention to enable the court to serve its process outside of its original territorial limits, nor, so far as I am aware, has any reason ever been adduced why such a measure may be desirable, nor has it been demanded. On the contrary, the comparison with the County Courts would indicate an intention to limit jurisdiction to persons found within the territory or at least to residents thereof wherever found. (N. Y. Const. art. VI, § 11.)

I come then to the actual wording of the amendment, and here it may be well to recognize at the outset that the phrase " original jurisdiction concurrent with the Supreme Court " is one whose origin appears to be shrouded in mystery, for there is no explanation anywhere in the record of its source, and it is apparent that it is both vague and inept. Viewed, however, in the light of its context and of the relevant proceedings in the Convention of 1922, and its predecessor of 1915, and of the jurisdiction of the court as it then existed, and as it had substantially existed for decades theretofore, it seems to me that the effort of the draftsman of the amendment was aimed at three objects: (1) To give to the court a constitutional status by providing in the Constitution for its continuance; (2) to extend its territorial jurisdiction from the old city to the greater city; and (3) to increase its jurisdiction over subject-matter by enlarging the pecuniary limit of actions cognizable (where such limit applied) from $2,000 to $3,000.

The word " jurisdiction " apart from other general meanings has to every lawyer at least a two-fold significance, which may perhaps be conveniently divided into territorial jurisdiction and jurisdiction of the subject-matter. Territorial jurisdiction ordinarily connotes power over property situated within the territory and power over persons resident therein or who may be found therein. Jurisdiction of the subject-matter relates generally to the character of controversy of which the court is authorized to take cognizance. Considered in this light the amendment quite naturally resolves itself into a provision *first*, that the existing jurisdiction of the court is confirmed but extended territorially to the greater city, and *second*, that its jurisdiction of the subject-matter is increased (where any limitation had previously obtained) from $2,000 to $3,000, and that was the simple form in which the report

of the Convention of 1915 hereinabove referred to couched its purposes. Why the peculiar phraseology under discussion was adopted for the present amendment, as I have said, is nowhere explained. It may well be that it represents an excess of caution on the part of some draftsman. The phrase " original jurisdiction " would ordinarily suggest a contrast to appellate jurisdiction, and apparently for that purpose the same words appear in article VI, section 11, relating to County Courts. Respondent, however, lays great stress upon the words " *concurrent* with the Supreme Court." To my mind, it seems quite probable that the draftsman intended to indicate that the jurisdiction conferred was not to be exclusive of that of the Supreme Court in respect of the same classes of action. Otherwise there appears to have been no reason to mention the Supreme Court at all; a far simpler and clearer expression such as State-wide would have sufficed. Respondent in support of its contention that concurrent jurisdiction means equal jurisdiction, territorially and otherwise, cites among other authorities: *State v. Sinnott* (89 Maine, 41); Bouvier's L. Dict. Precisely the opposite view may be found in *Rogers v. Bonnett* (2 Okla. 553), citing Rapalje & Lawrence's Law Dict. Little comfort is to be derived from mere definition. What strikes me as a far more persuasive consideration is that to interpret the amendment as contended for by respondent would result in the creation of an anomalous kind of court, namely, one of definitely limited territorial jurisdiction, as described in the first clause, yet with unlimited territorial jurisdiction over defendants, as set out in the second. The concept of territorial jurisdiction imports power of the court over all the property within its confines and over all its residents, and over non-residents while sojourning in its territory. It is illustrated by the provision of our Constitution in regard to County Courts which limits their jurisdiction territorially to the county or to residents of the county wherever found within the State. Naturally, there is no restriction as to the residence of the plaintiff, because within the State a plaintiff may select the county or city within which he chooses to sue. The significance of territorial jurisdiction lies in its relation to property and to the person of *defendants*. (*Landers v. Staten Island R. R. Co.*, 53 N. Y. 450, 458.)

With this background, let us for a moment consider the form of the amendment under consideration. As I interpret it, it first extends the territorial jurisdiction of the court over the greater city and then quite properly (introducing the 2d clause by an " and ") enlarges its jurisdiction over subject-matter from $2,000 to $3,000 (wherever a pecuniary limitation obtains). Viewed from the standpoint of the respondent, the first clause extends the

general territorial jurisdiction of this local court from the smaller to the greater city, and by " and " then extends its territorial jurisdiction again over the whole State in respect of causes of action which form at least the bulk of its jurisdiction over subject-matter. This strikes me as a strained and unnatural form both of thought and language. It can be well illustrated by paraphrasing the language of the amendment to state clearly what respondent claims it means. " The City Court shall have the same jurisdiction which it now possesses in the old city extended territorially to the greater city, and jurisdiction in the four classes of action which form the bulk of its jurisdiction extended territorially over the entire State."

Furthermore, it seems like a paradox that a local court, *i. e.,* a court of limited territorial jurisdiction, should have unlimited territorial jurisdiction over persons. Of course it might well be that no great or tremendous hardship would be imposed upon our population by permitting every local court to summon to its bar as defendants, residents from every part of the State. The reasoning which underlies the decision in *Pennoyer* v. *Neff* (95 U. S. 714) and kindred cases, is not one of convenience, but one implicit in the notion of sovereignty. For reasons of convenience alone it would be far more acceptable to a defendant resident in Jersey City to answer to a suit in the city of New York than to respond to a summons to a court in Camden or Cape May, and the analogy in a State like Texas would be far more striking. As applied to a local court, however, the element of convenience becomes a highly important consideration, for both by tradition, practice and theory local courts are established for the express facilitation of strictly local litigation. In the *Landers Case (supra)* the notion of " hauling men or women from distant parts of the State who have never been within the limits of the city within its power and subjecting them," to the jurisdiction of the local court there under discussion — namely, the City Court of Brooklyn — is spoken of with marked disfavor and as reflecting discredit upon the framers of any provision which should have to be so interpreted. (See, also, *Geraty* v. *Reid,* 78 N. Y. 64.)

It may not be out of place in this connection to note that the Constitution, if interpreted as respondent would have it, does not confine to plaintiffs resident within the city of New York the right to summon residents of the entire State. Residents of any part of the State might sue residents of any other part, in the City Court of the city of New York, on causes of action originating in any part of the State. Surely, as was said by the Court of Appeals in the *Landers* and other cases, jurisdiction so remarkable

and exceptional should not be assumed to have been created except in language so clear and explicit as to leave no room for doubt.

But it is not alone in the power of the court over defendants, if respondent's contention be adopted, that surprising results would obtain. The jurisdiction over subject-matter would be so distorted as to become, one might well say, grotesque. Take, for example, the four subjects of jurisdiction as to which there has heretofore been no pecuniary limit, namely, actions on bonds given in the court, actions for breach of promise of marriage, actions on installment contracts, and marine causes. If they be regarded, as they have been in the past, as peculiar and exceptional litigation in this court, then they should perhaps be included in the 1st clause, and then the summons in such actions would not run beyond the confines of the city. If, on the other hand, they are now to be regarded as included in the description of " actions for the recovery of money only," then we should for the first time find a pecuniary limit placed upon them without any reason assigned therefor. A still stranger result might follow as to actions to foreclose mechanics' liens. Heretofore the jurisdictional provision has limited the power of the court in that regard to property situated within the city. That class of action, however, now is found in the category of those in which the court is assumed to have State-wide jurisdiction. What is the meaning of State-wide jurisdiction over realty on the part of a local court; how is it to be exercised; and how could such a concept find lodgment in the mind of the draftsman of a constitutional provision?

In passing, and as confirming the notion that this amendment has been so ineptly worded as to demand constructive interpretation, let me point out that the provision for jurisdiction in respect of mechanics' liens imposes a limit of $3,000 as to the value of the " property involved," whereas heretofore there has been no limitation in that respect, nor, for that matter, in respect of the amount of the claim either. It must be at least very doubtful whether it was ever intended to limit the right of a mechanic to impose a lien upon real property to realty worth less than $3,000, and so far as the city of New York is concerned it is quite evident that at least in very large areas thereof there is no such property. Another example is the sentence following the one now under discussion, which, if construed literally, would give to the court " unlimited jurisdiction " in respect of counterclaims, thus enabling it to render judgment on every kind of counterclaim, legal or equitable, not merely as a defense as heretofore in respect of the latter class, but as an affirmative claim.

Surely a constitutional amendment which has been so unfortu-

nately and so loosely phrased should be interpreted conservatively and so far as possible in harmony with existing practice.   My view of the amendment is that it was intended to keep intact the jurisdiction of the court, but to extend its territorial scope to the limits of the greater city, and within that territory and that jurisdiction to increase jurisdiction of the subject-matter in the four classes of action named from the monetary limit of $2,000 to $3,000.   In that view all mandates of the court can be executed as provided in section 37 of the act of 1920, substituting the greater city for the old city wherever the words appear.   Consequently the act of 1926 in so far as it authorizes the service of mandates indiscriminately in every part of the State is ineffective as transcending the powers granted to the court by the Constitution.

Order reversed, with ten dollars costs and disbursements, and motion granted, with ten dollars costs, with leave to plaintiff to appeal to the Appellate Division.

LEVY, J. (concurring).  I concur with the able and comprehensive views of my learned brother.  I agree that the phrase " jurisdiction concurrent with the Supreme Court " must not be interpreted in its broader sense, but must receive the narrower construction to harmonize with the general intendment of the draftsman of the constitutional amendment.  I should ordinarily be loathe to add any observations, were it not for the fact that a study of the jurisdiction granted by the Constitution and the statutes in amplification, to the County Courts, emphasizes the correctness of the conclusion here reached.  Section 67, subdivision 4, of the Civil Practice Act gives the County Court custody of the person and care of the property, " concurrently with the supreme court," of a resident of the county, and the power to sell or otherwise dispose of the property of an incompetent non-resident whose property is situated within the county.

Section 69 greatly elucidates the effect of the grant of such *concurrent jurisdiction* as follows: " Where a county court has jurisdiction of an action or a special proceeding, it possesses the same jurisdiction, power and authority in and over the same, and in the course of the proceedings therein, which the supreme court possesses in a like case; and it may render any judgment, or grant either party any relief, which the supreme court might render or grant in a like case, and may enforce its mandates in like manner as the supreme court."  By virtue of article VI, section 11 of the Constitution, as amended, the general powers and jurisdiction of the County Courts as they existed prior to the adoption of such amendment, were confirmed as to such courts

existing in counties outside the city of New York; and section 69 thus has constitutional sanction.

It is to be observed that the effect of that section (§ 69) in referring to the jurisdiction of the County Court in actions and special proceedings as that " which the supreme court possesses in a like case," was not to extend its process to persons who were non-residents of the county, but to give to that court, *after it had acquired valid jurisdiction,* the same power to enforce its mandates as the Supreme Court enjoyed.   This interpretation is emphasized by the last clause of section 69 to the effect that the County Court might render relief or enforce its mandates in like manner as the Supreme Court.

Reasoning by analogy then, we may say that when the Constitution provided that the City Court shall have " original jurisdiction concurrent with the Supreme Court in actions for the recovery of money only in which the complaint demands judgment for a sum not exceeding three thousand dollars, and interest," it intended not to extend the process of the court to counties beyond those included within the city of New York; the purpose was rather to endow the court, after it had acquired proper jurisdiction of the person or subject-matter in the manner now provided by law, except for the increase of the limitation to $3,000, with the power to continue the action and authority to enforce its mandates in the same manner as the Supreme Court might exercise.

CRAIN, J. (concurring).   This is an appeal by the defendant from an order of the City Court of the City of New York, county of New York, which denied the defendant's motion made pursuant to rule 106 of the Rules of Civil Practice to dismiss the complaint on the ground that the City Court of the City of New York did not have jurisdiction.

This contention was based on the fact that the summons in the action was served upon the defendant in Albany, N. Y.   Section 27 of the City Court Act, effective January 1, 1927, expresssly authorizes such service outside the city of New York, but defendant, appellant, contends that said section 27 is unconstitutional.   The City Court was a local statutory court of inferior jurisdiction.   By constitutional amendment it became a constitutional court, its territorial jurisdiction was enlarged and the amount recoverable in it in certain cases was increased, but it remained an inferior and local court.   The only words in the amended Constitution changing or enlarging the territorial jurisdiction of the City Court of the City of New York are " it shall have the same jurisdiction and power throughout the city of New York, under the name City

Court of the city of New York, as it now possesses within the county of New York and the county of Bronx." The balance of section 15 of article 6 of the amended Constitution relates to jurisdiction of the subject-matter as distinguished from territorial jurisdiction. The reason why section 15 of article 6 of the amended Constitution provides that the court shall have " original jurisdiction * * * in actions for the recovery of money only in which the complaint demands judgment for a sum not exceeding three thousand dollars, and interest, and in actions of replevin, * * * where the property involved does not exceed in value the sum of three thousand dollars," is that such language alters its jurisdiction as previously limited by statute. (N. Y. City Court Act of 1920, §§ 18, 19, 20.) The reason why the words " concurrent with the Supreme Court " follow the words " original jurisdiction " in the clause in question is that but for them it might be urged that the jurisdiction conferred was within the territory named " *exclusive*." They serve no other purpose. Were the jurisdiction conferred intended to be co-extensive, that term would be used, or in lieu of it such words as " the same jurisdiction " as would be employed. (N. Y. City Court Act of 1920, § 20.) " Concurrent " is not a synonym of " co-equal " or of " co-extensive." The error below was in holding in substance that it was. " Concurrent " is the opposite of " exclusive." The first part of section 18 of article 6 of the amended Constitution applies exclusively to inferior local courts created by the Legislature. The City Court of the City of New York as now existing is not such a court. The part of the section referred to beginning with the words " but it may provide [referring to the Legislature] that the territorial jurisdiction in civil cases of any inferior or local court * * * shall extend throughout the county or counties in which such city may be located " confers upon the Legislature the power stated, but does not confer upon it power to extend the territorial jurisdiction *beyond* the confines of such counties. The amended Constitution did not confer territorial jurisdiction upon the City Court beyond the confines of such counties and the Legislature was not empowered to do so. The act pursuant to which service of the summons was made in Albany county, the constitutionality of which is challenged, was, therefore, unconstitutional, and the order appealed from must be reversed.